# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELVINO A. CAGNARDI,** | : | CIVIL ACTION NO. 1:16-CV-1577 |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **ERIC TICE,** Warden, *et al.*, | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Elvino A. Cagnardi ("Cagnardi") is serving a sentence of nine to eighteen years' imprisonment for aggravated assault. He filed a *pro* se application for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from his Pennsylvania sentence. We will deny Cagnardi's Section 2254 petition.

## I. Background[1]

In November 2011, Cagnardi was charged in a criminal complaint with attempted homicide and other offenses based on a violent altercation with his then-girlfriend. Commonwealth v. Cagnardi, No. CP-45-CR-2980-2011, at 1 (Pa. Ct. Com. Pl. Monroe Cty. Sept. 11, 2015) [hereinafter "9/11/15 PCRA[2] Op."]. After a preliminary hearing, the Commonwealth filed a criminal information charging Cagnardi with attempted criminal homicide, attempted criminal homicide of an

---

[1] The factual background is taken largely from the state court's recitation of facts. When additional facts are necessary, we rely on the state-court record.

[2] "PCRA" stands for the Post Conviction Relief Act, 42 PA. CONS. STAT. § 9541 *et seq.*, Pennsylvania's corollary to federal habeas corpus relief.

unborn child, aggravated assault, aggravated assault of an unborn child, simple assault, reckless endangerment, and several firearm offenses. Id.

The events underlying these charges are as follows. At the time of the incident, Cagnardi was romantically involved with Anna Trently ("Trently"), who was pregnant. Id. at 5. On the day in question, Trently left her job at a casino and began to drive home, and Cagnardi followed her in his vehicle. Id. Cagnardi pulled alongside Trently on a state highway, fired a bullet through her rear passenger window, forced her to stop her car, and attempted to shoot her in the head. Id. at 5-6. Cagnardi fully intended to kill Trently. Id. at 5. When his gun misfired, Cagnardi resorted to pistol whipping Trently over the head multiple times. Commonwealth v. Cagnardi, No. 2681 EDA 2013, 2014 WL 10558718, at *1 (Pa. Super. Ct. Oct. 24, 2014) (nonprecedential). Trently attempted to cover her head with her hands while Cagnardi repeatedly struck her with the butt of his gun, causing multiple serious injuries. Id. at *2. These injuries included a laceration on her head that needed staples to close and a broken hand, which healed with a deformity that would require surgery to repair. Id.; (Doc. 12-11, Sentencing Tr. 22:3-24:24). Trently was eventually able to flee and was picked up by a passing truck driver, whom Cagnardi chased until being stopped and arrested by state police. 9/11/15 PCRA Op. at 6.

Cagnardi entered an open guilty plea to one count of aggravated assault under 18 PA. CONS. STAT. § 2702(a)(1), a first-degree felony. Cagnardi, 2014 WL 10558718, at *1. At sentencing, the court determined that Cagnardi's "offense gravity score" was 11 rather than 10, finding that Cagnardi's assault had caused, not simply attempted, "serious bodily injury." Id.; see 204 PA. CODE § 303.15. The state

2

sentencing guidelines implicated a sentence of approximately 54 to 84 months, (see Sentencing Tr. 8:9-10:5), but the trial court varied upwards and sentenced Cagnardi to 108 to 216 months' imprisonment. Cagnardi, 2014 WL 10558718, at *1.

## II. Procedural History

Cagnardi appealed his sentence, which the Superior Court of Pennsylvania affirmed. Id. The Supreme Court of Pennsylvania denied his petition for allowance of review. Commonwealth v. Cagnardi, 116 A.3d 602 (Pa. 2015) (table). Cagnardi then sought state post-conviction relief, filing a timely *pro se* PCRA petition. 9/15/11 PCRA Op. at 2. Therein, Cagnardi raised, *inter alia*, several claims of ineffective assistance of counsel. Id. at 2-3. He alleged that his trial attorney, James Swetz, Esquire ("Attorney Swetz"), was constitutionally deficient for failing to fully investigate his defense, in particular Trently's history of abusive behavior, and for failing to properly inform him about his plea agreement. Id. at 2-3, 6-7. Cagnardi was appointed PCRA counsel, but that attorney filed a "Turner-Finley"[3] letter indicating that, after review, he believed that none of Cagnardi's proposed grounds for relief had merit. Id. at 3, 4; (Doc. 12-7). The PCRA court denied all post-conviction claims. 9/15/11 PCRA Op. at 9-10. On appeal, the Superior Court adopted the PCRA court's reasoning in its entirety and affirmed. Commonwealth v. Cagnardi, No. 3246 EDA 2015, 2016 WL 2962824, at *1 (Pa. Super. Ct. May 19, 2016) (nonprecedential).

---

[3] See generally Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988).

3

Cagnardi then filed the instant petition under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. The Eastern District transferred Cagnardi's habeas petition to this court. Cagnardi's petition is fully briefed and ripe for disposition.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254, mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); see also Johnson v. Williams, 568 U.S. 289, 302 (2013).

When a claim is properly exhausted and then raised on federal habeas review, the level of deference afforded to the state court decision is substantial. Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), cert. denied sub nom., Gilmore v. Bey, 138 S. Ct. 740 (2018) (mem.). The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'" Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 543 (3d Cir. 2014) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). Accordingly, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or

4

involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is an intentionally difficult standard to meet. Harrington v. Richter, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. Id.

Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim even if it implicates constitutional concerns. Martinez v. Ryan, 566 U.S. 1, 9 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)). A few limited exceptions to this rule exist. One is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If cause and

5

prejudice are established, the federal court reviews the claim *de novo* "because the state court did not consider the claim on the merits." Bey, 856 F.3d at 236 (citation omitted). Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'" Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

## IV. Discussion

Cagnardi asserts six grounds for habeas relief. Many of Cagnardi's claims, however, are not cognizable on federal habeas review or have been procedurally defaulted. We first address the grounds for relief that are improper or defaulted—thus warranting no merits analysis—before turning to the Sixth Amendment ineffectiveness claims.

### A. Claims Implicating Only State Law Concerns

In grounds 1, 2, and 5, Cagnardi challenges state-court determinations regarding discretionary sentencing issues and application of Pennsylvania law. He alleges that the sentencing court improperly determined that his actions caused "serious bodily injury" warranting an offense gravity score of 11 rather than 10 (ground 1); his sentence of nine to eighteen years is unreasonable because it is substantially longer than the state sentencing guidelines' recommendation (ground 2); and the court abused its discretion at sentencing by ignoring mitigating factors (ground 5).

6

These claims are inappropriate for federal habeas review. Cagnardi essentially asks the federal court to sit as an appellate court and critique a Pennsylvania court's discretionary sentencing decisions and application of state law. We decline this invitation, as we must. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (alteration in original) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). None of the issues raised in grounds 1, 2, and 5 implicates federal law or constitutional concerns. Therefore, these claims fall outside the scope of Section 2254 review. See id.; 28 U.S.C. § 2254(a).

**B. Grounds Asserting Violations of Federal Law**

Cagnardi's three remaining claims do implicate "the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). In ground 6, Cagnardi alleges that he was denied his right to a jury trial under the Sixth Amendment to the United States Constitution.[4] In grounds 3 and 4, Cagnardi claims that Attorney Swetz's representation violated his Sixth Amendment right to effective assistance of counsel.

### 1. *Denial of Right to Jury Trial*

Cagnardi alleges that he was denied his Sixth Amendment right to a jury trial. He contends that once he learned that there was no guarantee as to what his precise offense gravity score or sentencing guideline range would be, he repeatedly

---

[4] Cagnardi does not explicitly invoke the Sixth Amendment or its jury-trial clause. However, we liberally construe his *pro se* petition as asserting this right such that ground 6 falls within the purview of Section 2254.

7

attempted to withdraw his guilty plea and go to trial. Cagnardi avers that on at least three occasions he sought to withdraw his plea but was barred by the court from asserting his right to go to trial.

It does not appear that Cagnardi presented this claim to the state courts. Consequently, it is procedurally defaulted unless Cagnardi can establish cause and prejudice to excuse the default. Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). He cannot. Cagnardi proffers no reason why this claim was not presented on appeal or in state post-conviction proceedings. Even if we assume, *arguendo*, that Cagnardi is alleging that his trial attorney was ineffective for permitting the purported jury-trial violation and that default of this claim was caused by ineffective PCRA counsel, see Martinez, 566 U.S. at 17, a review of the record eviscerates any such argument.

Cagnardi was facing a host of serious charges, not the least of which included attempted homicide of both Trently and her unborn child. He agreed to plead guilty to a single count of aggravated assault and have the other charges dismissed. Prior to commencement of sentencing, the court fully discussed Cagnardi's request to withdraw his plea and thoroughly informed him of the potential consequences of going to trial. (See Sentencing Tr. 3:16-20:10). If convicted, the court advised, the attempted homicide charges alone each carried a maximum penalty of 20 to 40 years' imprisonment. (Id. at 11:6-12:7). The court then informed Cagnardi that if it progressed to a determination of whether his offense gravity score was 10 or 11, it would consider sentencing initiated and he could no longer withdraw his guilty plea. (Id. at 19:11-22). Cagnardi expressed understanding and opted to proceed to

8

the offense gravity score determination and sentencing rather than withdraw his plea. (Id. at 19:22-20:24).

Under these circumstances, neither Cagnardi's trial counsel nor his PCRA counsel could be considered ineffective in failing to raise a claim that Cagnardi's jury-trial rights had been violated. Any argument to this effect would have been entirely frivolous in light of the colloquy that preceded sentencing. Accordingly, Cagnardi cannot show cause to excuse procedural default of this claim and we will deny it without a merits review.

### 2. *Ineffective Assistance of Counsel*

A collateral attack based on ineffective assistance of counsel is governed by the familiar two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See id. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687.

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See Strickland, 466 U.S. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the ineffectiveness claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was *unreasonable*." Richter, 562 U.S. at 101 (emphasis added); Collins, 742 F.3d at 547-48. Under this "doubly" deferential standard, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a Strickland claim lacks merit precludes federal habeas relief. Richter, 562 U.S. at 101, 105 (citation omitted).

### a. **Failure to Present "Mitigating" Evidence**

In ground 3, Cagnardi asserts that Attorney Swetz was ineffective in failing to investigate and present "mitigating" evidence regarding Trently's abusive behavior toward him during their relationship. Cagnardi appears to argue that if his attorney had uncovered and presented evidence of Trently's "provocative and assaultive behavior," the outcome of his case would have been different. (Doc. 1 at 12-14). This claim was presented to and denied by the state court. See 9/11/15 PCRA Op. at

6-7.[5] The court rejected Cagnardi's ineffectiveness argument because he had failed to explain why this character evidence would have mattered, as it had no bearing on the assault and would have provided no defense to the crimes charged. Id. at 7.

In no way can we say that the state court's application of Strickland was unreasonable. Cagnardi did not then, and does not now, explain how presenting evidence of Trently's allegedly abusive character would have been relevant to, or would have had a reasonable probability of altering the outcome of, his case. An attorney cannot be ineffective for failing to raise a meritless argument, United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015); thus the PCRA court's determination that Attorney Swetz's conduct was not deficient in this regard was entirely sound. Ground 3 provides no basis for habeas relief. See Richter, 562 U.S. at 101.

### b. Failure to Advise Regarding Consequences of His Guilty Plea

In ground 4, Cagnardi alleges that Attorney Swetz was ineffective in failing to advise him regarding the consequences of his plea agreement. Cagnardi's argument appears to be as follows. Cagnardi believed he was signing a plea deal in which he agreed to plead guilty to one count of aggravated assault with an offense gravity score of 10 as reflected in the written agreement. At his guilty plea hearing, Cagnardi learned that the Commonwealth was seeking an offense gravity score of

---

[5] Because the Superior Court of Pennsylvania expressly adopted the reasoning of the PCRA court, we "look through" the Superior Court decision to the last reasoned decision of the state court, *viz.*, the September 11, 2015 PCRA court opinion. See Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009); Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).

11

11, that the deal he signed needed to be adjusted to reflect the potential for an offense gravity score of either 10 or 11, and that the court would make the final determination on the score at sentencing. Cagnardi contends that this unexpected change of circumstances compelled him to try to withdraw his guilty plea, which decision Attorney Swetz failed to support or effectuate. These actions, Cagnardi maintains, fell below an objective level of reasonableness under prevailing professional norms.

This ineffectiveness claim was also presented to, and denied by, the state court. See 9/11/15 PCRA Op. at 6, 7-9. The PCRA court, presumably focusing on the prejudice prong of the Strickland analysis, determined that Cagnardi had been fully informed about: (1) the contents of his plea agreement, (2) the extensive benefits provided therein, (3) his sentencing exposure under the agreement versus being convicted at trial, (4) the fact that the plea deal contained no agreement as to a particular sentence or sentencing range, and (5) that his sentence ultimately would rest within the discretion of the court. Id. at 7-9. Armed with this information, Cagnardi made a knowing and informed decision to plead guilty rather than proceed to trial, and his claim of inadequate plea advice was therefore meritless. Id. at 9.

We can discern no unreasonable application of Strickland by the state court. The PCRA court fully and accurately explained why Cagnardi was not prejudiced even if Attorney Swetz had failed to provide constitutionally effective advice about the open plea agreement. And because Cagnardi failed to make an adequate showing on the Strickland prejudice prong, no analysis of the performance prong

12

was required.  See Strickland, 466 U.S. at 697; Lilly, 536 F.3d at 196.  The state court reasonably applied Strickland to this claim; hence ground 4 does not merit habeas relief.  Richter, 562 U.S. at 101.

## V. Conclusion

We will deny Cagnardi's application (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Many of the claims Cagnardi raises in his petition are not cognizable under Section 2254 or are procedurally defaulted.  The remaining claims that are properly before this court have no merit.  We will likewise deny a certificate of appealability, as Cagnardi has failed to make the requisite "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(1), (2).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     April 15, 2019